IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02152-KAS

E.J.S.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

      This matter is before the Court on the **Social Security Administrative Record** [#9], filed October 16, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1381 et seq. Plaintiff filed an Opening Brief [#10] (the "Brief") and Defendant filed a Response [#12] (the "Response") in opposition. Plaintiff did not file a Reply. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

_____

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#11]; *Reassignment* [#13]; *Order of Reference* [#14].

## I. Background

On August 17, 2020, Plaintiff filed an application for a period of disability and disability insurance benefits under Title II. Tr. 23.[3] On August 25, 2020, Plaintiff also filed an application for supplemental security income under Title XVI. *Id.* In both applications, Plaintiff alleged disability beginning December 12, 2010, which he later amended to February 26, 2021. *Id.* His claims were initially denied on January 7, 2021, and again on April 22, 2022, upon reconsideration. *Id.* On May 10, 2022, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). *Id.* At the hearing held on February 26, 2023, Plaintiff withdrew his application for a period of disability and disability insurance benefits under Title II. *Id.* On March 21, 2023, the ALJ issued an unfavorable decision as to Plaintiff's Title XVI application. Tr. 36. On May 30, 2023, the Appeals Council denied Plaintiff's request for review. Tr. 7.

In her March 21, 2023 decision, the ALJ first determined that Plaintiff met the insured status requirements of the Act and that he had not engaged in substantial gainful activity ("SGA") since February 26, 2021, the amended alleged onset date. Tr. 26. The ALJ then found that Plaintiff suffers from five severe impairments: (1) degenerative disc disease of the lumbar spine; (2) osteoarthritis of the left shoulder; (3) bipolar disorder type 1; (4) generalized anxiety disorder with panic and agoraphobia; and (5) polysubstance abuse disorder. *Id.* However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9-1 through 9-13, by the sequential transcript numbers instead of the separate docket numbers.

listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." Tr. 27.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "light work,"[4] with the following limitations:

> [He] would require work which entails routine repetitive tasks and simple decision making; [he] would require work which is occasionally in close proximity to coworkers or supervisors, and minimal to no direct contact with the public; [he] could only lift or carry ten pounds frequently, and twenty pounds occasionally (from very little, up to 1/3 of an 8-hour work day); [he] could stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday; [he] could sit (with normal breaks) for a total of 6 hours in a 8-hour workday; [he] should avoid unprotected heights, moving machinery; and [he] could perform each of the following postural activities frequently, stooping, crouching, kneeling, crawling; [he] could climb ladders/ropes/scaffolds occasionally; occasional climbing of ramps or stairs; overhead reach [of his] nondominant left upper extremity limited to occasionally.

Tr. 29. The ALJ further found that Plaintiff had no past relevant work because he "ha[d] not worked at the [SGA] level within the past fifteen years." Tr. 35. The ALJ noted that Plaintiff was "an individual closely approaching advanced age" and had "at least a high school education." *Id.* (citing 20 C.F.R. §§ 416.963, 416.964). The ALJ noted that "transferability of job skills [was] not an issue because [Plaintiff did] not have past relevant work." *Id.* (citing 20 C.F.R. § 416.968). Finally, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, and given the testimony of the Vocational Expert ("VE"), there were a significant number of jobs in the national economy which

---

[4] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he . . . can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

Plaintiff could perform, including the representative occupations of "small product assembler," with 59,000 jobs nationally; "electronics worker," with 17,000 jobs nationally; and "cafeteria attendant," with 64,400 jobs nationally. Tr. 35-36 (citing 20 C.F.R. § 416.929). The ALJ therefore found that Plaintiff was not disabled at step five. Tr. 36.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 416.1400(a)(5). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

[T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making

a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.     The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any

subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [his or her] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 416.945(a)(2). Further, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

B.      **Substantial Evidence**

An ALJ must consider all evidence and explain why she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "[the Court] review[s] the [ALJ's] decision only to determine whether [her] factual findings are supported by substantial evidence and whether [she] applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g); *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "failure to apply the correct legal standard or to provide th[e] [C]ourt with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal," separate from a lack of substantial evidence. *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that the ALJ erred by (1) failing to properly assess the opinion of Richard B. Madsen, Ph.D. ("Madsen"); (2) mischaracterizing the Diversus Health treatment records; (3) failing to properly determine Plaintiff's RFC; and (4) in step five, providing three jobs which conflict with Plaintiff's RFC. *Brief* [#10] at 11[5], 13, 15, 17-19, 21-23. The Court addresses each argument in turn.

### A.   Step Four

#### 1.   Dr. Madsen's Opinion

Plaintiff argues that the ALJ erred by failing to properly assess the opinion of Dr. Madsen, who conducted consultative examinations of Plaintiff in November 2020 and January 2022. Tr. 34. Plaintiff argues that "[t]he ALJ's finding that Dr. Madsen's opinion was 'not well-supported by the evidence [he] relied upon . . . [and] not consistent with the updated evidence in the record from other sources'" was not supported by substantial evidence because "[the ALJ] did not identify specifically what 'updated evidence' from other sources she believed contradicted Dr. Madsen." *Brief* [#10] at 12 (quoting Tr. 34). Plaintiff further argues that the ALJ unreasonably found that the opinion of Ellen Ryan, M.D. ("Ryan"), one of the state agency psychological consultants, was more persuasive than Dr. Madsen's. *Brief* [#10] at 13. Finally, Plaintiff argues that "the ALJ's reliance on the fact that Dr. Madsen did not have a treating relationship with [him] and only examined him twice does not amount to substantial evidence." *Id.* at 12 (citing Tr. 34).[6]

---

[5] Page number citations refer to the numbering used by the Court's CM/ECF docketing system on the top right of each page.

[6] Plaintiff also makes a cursory argument that the ALJ's finding that Dr. Madsen's opinion was unpersuasive was not supported by substantial evidence because "the medical record following Dr. Madsen's January 2022 examination contradicts the ALJ's conclusion." *Brief* [#10] at 12.

Under the regulations, the ALJ must "articulate how [she] considered the medical opinions" presented in the claim. 20 C.F.R. § 416.920c(a). Pursuant to 20 C.F.R. § 416.920c(b)(2), supportability and consistency are the two most important factors for the ALJ to consider when determining the persuasiveness of medical opinions. "Regardless of any other factors considered, the ALJ <u>must</u> explain how [s]he considered the two 'most important factors'—supportability and consistency." *Crystal R.E. v. Kijakazi*, No. 20-cv-00319-SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting C.F.R. § 404.1520c(b)(2)) (emphasis in original); *see* 20 C.F.R. § 416.920c(b)(2) (stating that the agency "*will* articulate how [it] considered the supportability and consistency factors for a medical source's medical opinion[ ]") (emphasis added). The ALJ "may, but [is] not required to, explain how [she] considered . . . [the provider's] [r]elationship with the claimant." 20 C.F.R. § 416.920c(b)(2), (c)(3).

Here, the ALJ discussed the supportability of Dr. Madsen's opinions at length, including a comparison of Dr. Madsen's opinions from both of his examinations of Plaintiff. The ALJ noted that in November 2020, Dr. Madsen found that Plaintiff had "mild to marked levels of impairment in various areas of mental functioning." Tr. 34; *see* Tr. 914-15 (Dr. Madsen finding that Plaintiff had a marked level of impairment in interacting with coworkers and the public and moderate levels of impairment in maintaining acceptable attendance, consistently performing work activities, and completing a normal workday or workweek without interruptions). The ALJ further noted that, in his January 2022 examination, Dr. Madsen found that Plaintiff had "mild up to marked levels of impairment

---

Plaintiff fails to provide further analysis as to which parts of the medical record contradicted the ALJ's conclusion, and the Court therefore finds this argument waived. *See Nixon v. City and County of Denver*, 784 F.3d 1364, 1368 (10th Cir. 2015) ("[A]n issue on appeal is waived [when] it is not adequately developed in a party's brief.").

in various areas of mental functioning, more limiting than his previous consultative examination report and finding." Tr. 34; *see* Tr. 1496 (Dr. Madsen finding that Plaintiff had only a moderate level of impairment in interacting with coworkers and with the public but had marked levels of impairment in maintaining acceptable attendance, consistently performing work activities, and completing a normal workday or workweek without interruptions). Dr. Madsen did not explain what medical evidence supported his more limiting conclusions. Based on these differences, the ALJ found that Dr. Madsen's opinion was "not well-supported by the evidence relied on in explanation of [his] opinion," which noted that "[t]esting did not indicate any significant impairment of cognitive function or memory." Tr. 31, 34.

As for consistency, Plaintiff states that "Dr. Ryan declined to adopt Dr. Madsen's opinion" when reviewing Plaintiff's records because she believed "it was an overestimate based on a one-time exam, which . . . was not long enough for Dr. Madsen to obtain a longitudinal picture." *Brief* [#10] at 13. Plaintiff argues that, "applying Dr. Ryan's own rationale," Dr. Ryan's "one-time paper review would be even less sufficient" than Dr. Madsen's examination, therefore making it unreasonable to find Dr. Ryan's opinion more persuasive than Dr. Madsen's. *Id.* However, nothing in the ALJ's decision indicates that she utilized Dr. Ryan's rationale when finding that Dr. Madsen's opinion was inconsistent with the other evidence in the record. Rather, the ALJ found that Dr. Madsen's opinion was "not consistent with the updated evidence in the record from other sources," which was not limited to Dr. Ryan's opinion. Tr. 34.

As for Dr. Madsen's relationship with Plaintiff, the ALJ merely noted that in "considering other factors, [Dr. Madsen] has no relationship with the claimant and has

examined him twice." Tr. 34. The ALJ then explained that her finding was "based *primarily* on the factors of supportability and consistency." *Id.* (emphasis added). The ALJ could permissibly consider Dr. Madsen's relationship with Plaintiff under the regulations. 20 C.F.R. § 416.920c(b)(2), (c)(3).  Thus, the Court finds that the ALJ's consideration of Dr. Madsen's treating relationship with Plaintiff, where the ALJ also considered the mandatory elements of supportability and consistency, does not amount to legal error.

The Court agrees with Defendant that Plaintiff's "argument is a request [for the] Court to reweigh the evidence," which is "outside the purview of substantial-evidence review." *Response* [#12] at 9 (citing *Alarid v. Colvin*, 590 F. App'x 789, 795 (10th Cir. 2014)). The ALJ's discussion of Dr. Madsen's opinion touches on both supportability and consistency, the two mandatory factors. 20 C.F.R. § 416.920c(b)(2). The Court finds that the ALJ's finding that Dr. Madsen's opinions were unpersuasive was supported by substantial evidence. Therefore, the Court finds no error in the ALJ's analysis of Dr. Madsen's opinion.

## 2.    Diversus Treatment Health Records

Plaintiff next argues that the ALJ inappropriately considered the Diversus Health treatment records by finding that, "[a]fter joining a sober living house residence in October 2022, [Plaintiff] attended talk therapy with generally unremarkable mental status examinations." *Brief* [#10] at 13 (quoting Tr. 32). Specifically, Plaintiff argues that the ALJ "mischaracterize[d]" the records, which began November 3, 2021, and showed that, even with "significant assistance to accomplish basic life tasks," Plaintiff "still suffered from mood episodes that caused him to fail to take care of his personal needs adequately[.]" *Brief* [#10] at 13-14.

The Court agrees that the ALJ erred by stating that Plaintiff began talk therapy in October 2022, rather than on the correct date of November 3, 2021. The Court also agrees that the ALJ mischaracterized the Diversus Health treatment records because the Diversus Health clinicians specifically refrained from assessing whether Plaintiff's condition was "remarkable" or "unremarkable." *See, e.g.*, Tr. 1751, 1796, 1847 (stating that Plaintiff's "condition [was] outside [the] scope of [their role as] service provider"). However, Plaintiff fails to explain how a different interpretation would yield a different outcome. *See Alford v. Comm'r, SSA*, 767 F. App'x 662, 666 (10th Cir. 2019) (concluding that plaintiff-appellant "waived any challenge to the district court's dismissal" of his claims against the Commissioner because he "reiterate[d] [his] claims in his briefs in [a] conclusory fashion, but [did] not . . . explain to [the court] why the district court's decision was wrong[.]") (internal citation and quotation marks omitted); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived[.]")). Despite the ALJ's error, she sufficiently articulated the basis of Plaintiff's RFC assessment as explained in Section III.A.3. below. Accordingly, the Court finds no reversible error in the ALJ's evaluation of the Diversus Health treatment records.

### 3.    Sufficiency of the RFC

Plaintiff also argues that the ALJ erred by failing to properly evaluate the functionally limiting effects of Plaintiff's mental health symptoms by concluding that "the RFC she found was 'supported by the record of the claimant's conservatively managed physical pain, and good response to mental health treatment when he is compliant with therapy attendance and prescribed medications.'" *Brief* [#10] at 17 (quoting Tr. 34-35). Plaintiff argues that the ALJ failed to properly consider Plaintiff's need for a structured

living environment and ability to work on a regular and consistent basis. *Brief* [#10] at 6, 8. Plaintiff also argues that the ALJ committed legal error because her conclusion "suggests that she considered noncompliance with medical treatment as a factor that undermined [Plaintiff's] claim of disabling mental illness" without following the four-factor test outlined in *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987). *Brief* [#10] at 17-18.

An ALJ must use "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *7 (Oct. 25, 2017). In so doing, the ALJ considers seven non-exclusive factors:

i.    The claimant's daily activities;

ii.   The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

iii.  Precipitating and aggravating factors;

iv.   The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms;

v.    Treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms;

vi.   Any measures the claimant uses or has used to relieve his pain or other symptoms (e.g., lying flat on his back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

vii.  Other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3). The ALJ is not required to discuss every factor. SSR 16-3p, 2017 WL 5180304, at *8 ("If there is no information in the evidence of record regarding one of the factors, [the ALJ] will not discuss that specific factor in the determination or

decision because it is not relevant to the case."). Further, the ALJ is not required to engage in a "formalistic factor-by-factor recitation of the evidence" in this context. *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

In addition to the factors outlined in 20 C.F.R. § 416.929(c)(3), the ALJ must base her RFC assessment "on all of the relevant evidence in the case record, such as . . . [t]he effects of treatment . . . , [r]eports of daily activities, [l]ay evidence, [e]ffects of symptoms . . . [and] [n]eed for a structured living environment[.]" SSR 96-8p, 1996 WL 374184, at *5. In so doing, "the [ALJ] must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule)." *Id.* at *7. "If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted." *Id.*

### a. Need for Structured Living Environment

Plaintiff argues that "the ALJ failed to properly assess [Plaintiff's] 'ability to complete tasks . . . independently, appropriately, and effectively . . . on a sustained basis.'" *Brief* [#10] at 15 (quoting 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00, ¶ C.6.c). Plaintiff's argument is based on the opinion of Alaina Dorris ("Ms. Dorris"), who was Plaintiff's case manager at Diversus Health, and the medical evidence describing the various support that Plaintiff received.[7] Specifically, Plaintiff argues that the ALJ should have placed more

---

[7] Plaintiff also argues that "[t]he medical evidence shows that when [Plaintiff] is left to his own devices, without constant close supervision, he has significant difficulty making and/or attending appointments, taking his medications, and avoiding behaviors that are detrimental to his health and wellbeing." *Brief* [#10] at 15. Plaintiff supports his argument by citing twenty-eight sections of the record but does not point to any place in the record where a medical provider linked Plaintiff's mental impairments with his difficulty maintaining his health and wellbeing. The Court finds that the ALJ's consideration of Plaintiff's time in a sober living house and the positive effect of treatment is substantial evidence on this point.

value on Ms. Dorris's opinion because it "was consistent with the opinions of . . . other treating and examining providers." *Brief* [#10] at 15. [8]

The ALJ discussed Ms. Dorris's opinion at length, including her statement that Plaintiff "is motivated to live a sober life and to take his medications as prescribed, but . . . needs the appropriate tools in place to make that possible for him." Tr. 32 (citing Tr. 1713). The ALJ "note[d] that Ms. Dorris'[s] report [was] focused on [Plaintiff's] sobriety maintenance, and [did] not provide a[n] . . . assessment of [Plaintiff's] mental work-related abilities, so [was] therefore of limited value in establishing the claimant's [RFC]." Tr. 32. "Therefore, the [ALJ] . . . considered Ms. Dorris'[s] statements only to the extent that they are consistent with the preponderance of the opinions and observations by the medical sources in [the record]." *Id.* Accordingly, the Court finds no error in the ALJ's discussion of Plaintiff's need for a structured living environment.

### b.      Ability to Work on a Regular and Consistent Basis

Plaintiff argues that "[s]ubstantial evidence does not support the ALJ's finding that [he] could work on a regular and continuing basis." *Brief* [#10] at 18. In support of his argument, Plaintiff makes a sweeping statement that, "[s]ince mental illness is defined and characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings . . . [and]

---

[8] In support, Plaintiff also notes that, in the Diversus Health treatment records, his "provider expressed concern that, '[w]ithout continued services, [he] *may* decompensate and require a higher and more restrictive level of care.'" *Brief* [#10] at 15 (citing Tr. 1738) (emphasis added). Plaintiff fails to explain how the Diversus Health provider's speculative concerns regarding Plaintiff's future wellbeing proves that the ALJ's RFC determination was not sufficiently restrictive. While the ALJ did not reference this quote from the treatment records, which spans over three hundred pages, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148.

[t]he mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day." *Id.* (quoting SSR 85-15, 1985 WL 56857, at *5-6).[9]

Plaintiff glazes over a key passage connecting the two passages he cited, which states that "[t]his section is not intended to set out any presumptive limitations for disorders, but to emphasize the importance of thoroughness in evaluation on an *individualized* basis." SSR 85-15, 1985 WL 56857, at *5 (emphasis added). The Court finds that Plaintiff's single sweeping statement is insufficient to show that the ALJ's finding that Plaintiff was capable of (very limited) SGA was not supported by substantial evidence. Thus, the Court finds no error in the ALJ's analysis of Plaintiff's ability to work on a regular and consistent basis.

### c.    Noncompliance and the *Frey* Test

Plaintiff also argues that the ALJ erred by improperly "consider[ing] noncompliance with medical treatment as a factor that undermined [his] claim of disabling mental illness" without first "determining whether [Plaintiff] has a justifiable reason for the alleged noncompliance, and whether the treatment would restore the ability to work." *Brief* [#10] at 17-18. In support, Plaintiff cites to *Frey v. Bowen*, where the Tenth Circuit held that, "[i]n reviewing the impact of a claimant's failure to undertake treatment on a determination

---

[9] Plaintiff also makes a cursory argument that the ALJ erred by finding that Plaintiff can perform SGA because "[t]he activities that [he] described were minimal." *Brief* [#10] at 19. Plaintiff supports this argument with an in-depth recitation of Plaintiff's testimony about his daily activities but fails to provide any analysis as to how these activities render him incapable of performing SGA. *Id.* The Court agrees with Defendant that "nowhere does the ALJ claim Plaintiff's activities showed greater functioning than alleged." *Response* [#12] at 16. Rather, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 30. The Court finds that the ALJ's finding is consistent with the regulations for determining whether an individual's symptoms affect his ability to perform SGA.

of disability, [the Court] consider[s] four elements: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Frey*, 816 F.2d at 517.

Defendant responds by arguing that "[t]he *Frey* test does not need to be addressed where an ALJ does not find the claimant is disabled without the treatment." *Response* [#12] at 14. The Court agrees. In *Shanks v. Saul*, No. 20-cv-314-RBJ, 2021 WL 423437, at *11 (D. Colo. Feb. 8, 2021), the court explained that "*Frey* . . . applies when the failure to pursue treatment is central to a claim's denial, but not when it is used only to assess a claimant's credibility with respect to symptoms like pain." *See also Johnson v. Colvin*, 640 F. App'x 770, 774 (10th Cir. 2016) ("[W]hen . . . noncompliance with prescribed treatment is invoked not as [an] independent basis for denying disability but only as a factor diminishing the credibility of a claimant's allegations of the severity of symptoms . . . the ALJ need not also find the foregone treatment would have restored the claimant's ability to work.").

The Court agrees with Defendant that "the decision does not include any statements [indicating] that the ALJ used [Plaintiff's] noncompliance with treatment as a factor for believing [his] subjective claims were not accurate." *Response* [#12] at 13. The only part of the ALJ's decision that Plaintiff references in support of his argument is the ALJ's conclusion "that the RFC she found was 'supported by the record of the claimant's conservatively managed physical pain, and good response to mental health treatment when he is compliant with therapy attendance and prescribed medications.'" *Brief* [#10] at 17 (citing Tr. 34-35). This conclusion merely shows that the ALJ considered the

effectiveness of treatment and medications, which she could do under the regulations. *See* SSR 96-8p, 1996 WL 374184, at *5.

Overall, Plaintiff fails to show that the ALJ did not properly consider the record with respect to Plaintiff's need for a structured living environment, his ability to work on a regular basis, and his treatment and medication history. Accordingly, the Court finds that the ALJ's RFC determination has sufficient support in the record.

### B.      Step Five

Plaintiff argues that "[t]he ALJ's Step Five finding is based on legal error and the Commissioner has not met her burden of showing by substantial evidence that [Plaintiff] could perform the jobs that the ALJ relied on to deny benefits." *Brief* [#10] at 20. He argues that "[t]he ALJ's findings are legally deficient" because the ALJ failed to include all manipulation limitations and additional injuries in the hypothetical questions, and the ALJ provided three jobs that conflict with Plaintiff's RFC. *Id.* at 20-24.

### 1.      Manipulation Limitations and Additional Injuries

Plaintiff argues that "the ALJ erred by failing to include all of the limitations on manipulation that [Timothy Moser, M.D. ("Dr. Moser"), the physical consultative examiner,] indicated existed in January 2021, or at least explain why she was not accepting the limitations on handling, fingering, and feeling." *Brief* [#10] at 21 (citing Tr. 34). He points to the VE's testimony that, if such limitations were added to the hypothetical, "there was no work because all of the light positions that would accommodate the manipulative limitations would involve interaction with the public that exceeded the parameters" of Plaintiff's RFC. *Brief* [#10] at 21. Plaintiff argues that, by not including the additional manipulation limitations, the ALJ "substituted her lay opinion for

Dr. Moser's." *Id.* (citing *Valdez v. Barnhart*, 62 F. App'x 838, 842 (10th Cir. 2003)). Plaintiff also argues that the ALJ erred by failing to include "additional injuries to [Plaintiff's] upper extremities" that "affect[ed] his ability to reach, handle, finger, and feel, beyond the reaching limitations the ALJ found." *Brief* [#10] at 21. He notes that Plaintiff "broke his collarbone" in October 2021, "fractured his left wrist" in July 2022, and "was treated . . . for an injury and infection of his right middle finger" in October 2022. *Id.* Plaintiff argues that, because the hypothetical questions "[did] not relate with precision to all of [his] impairments," the VE's "[t]estimony elicited by [such] hypotheticals . . . cannot constitute substantial evidence to support the [ALJ's] decision." *Id.* (quoting *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir. 1991)).

The Court reads Plaintiff's argument as challenging the lack of additional limitations in both the hypothetical and the RFC determination. *See Brief* [#10] at 20 (noting that "[t]he ALJ adopted the VE's responses to hypothetical questions that *mirrored* the RFC [that] the ALJ found for [Plaintiff]" (emphasis added)). While the ALJ's RFC determination included that "overhead reach [of the] nondominant left upper extremity [is] limited to occasionally," the ALJ did not reference any additional limitations on Plaintiff's ability to reach, handle, finger, and feel. Tr. 29. However, the Court agrees with Defendant that "the ALJ [sufficiently] explained why he believed Dr. Moser's opinion was only 'partially persuasive.'" *Response* [#12] at 17 (quoting Tr. 34). The ALJ found that Dr. Moser's finding that Plaintiff could "occasionally reach, handle, finger, and feel" was only partially consistent with other findings that Plaintiff's "strength was full at 5/5 throughout" and that he had "normal fine manipulation and grip strength and intact light touch." Tr. 34. As for the additional injuries, the Court also agrees with Defendant that the injuries "in no

way suggest ongoing medical impairments that lasted for 12 months or more, as required for disability." *Response* [#12] at 18; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 1.00(E)(1). Therefore, because "the . . . hypothetical question to the VE . . . included all the limitations [that] the ALJ ultimately included in [her] RFC assessment," "the VE's answer to that question provide[s] a proper basis for the ALJ's disability decision." *Qualls*, 206 F.3d at 1373 (citing *Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir. 1993)). Accordingly, the Court finds no error in the lack of additional limitations in the ALJ's hypothetical questions to the VE.

### 2.    Consistency of Provided Jobs

Plaintiff next argues that the ALJ provided three jobs which directly conflict with his determined RFC. He argues that "[t]he ALJ erred in finding that [Plaintiff] could perform the unskilled, Specific Vocational Preparation (SVP) 2 jobs that the VE identified" because "the [Dictionary of Occupational Titles' ("DOT")] SVP ratings contemplate the time it would take a typical unimpaired worker to learn a job" and are "insufficient to account for impairments in mental functioning." *Brief* [#10] at 21-22. In support, Plaintiff notes that "[t]he Commissioner is in the process of 'developing a new . . . [s]ystem . . . , which will replace the DOT as the primary source of occupational information SSA staff use in [the] disability adjudication process.' In the [Occupational Information System] project, the Commissioner recognizes '[t]he DOT . . . does not provide information on the mental and cognitive requirements'" of occupations. *Id.* at 22 n.8 (quoting Soc. Sec. Admin., *Occupational          Information          System          (OIS)          Project*, https://www.ssa.gov/disabilityresearch/occupational_info_systems.html).   Plaintiff   also argues that "all of the jobs the VE identified have a Reasoning level of 2," which "is

incompatible with the RFC for 'routine repetitive tasks and simple decision making' that the ALJ found[.]" *Brief* [#10] at 23 (quoting Tr. 29). In support, Plaintiff cites several cases where "judges have reversed and remanded an ALJ's decision for failing to identify, explain, and/or reconcile conflicts between an RFC for simple work and Reasoning level 2 jobs." *Brief* [#10] at 23.[10]

The Court agrees with Defendant that "the Tenth Circuit has repeatedly recognized . . . [that] a limitation to unskilled work . . . can account for a claimant's mental impairments." *Response* [#12] at 18; *see Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) ("[L]imiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace."); *Hernandez v. Colvin*, 567 F. App'x 576, 582-83 (10th Cir. 2014). While the Court recognizes that a new system will eventually replace the DOT, the mere development of a new system is insufficient to show that the ALJ's adherence to current protocols constitutes reversible error.

As for the reasoning level of the jobs provided, the Court agrees with Defendant that "[t]he Tenth Circuit has held that simple work appeared *consistent* with GED Reasoning Level 2." *Response* [#12] at 19 (emphasis in original). The DOT's General Educational Development ("GED") scale outlines the "aspects of education . . . which are required of the worker for satisfactory job performance." *See Dictionary of Occupational Titles*, App'x C (4th ed. 1991). Workers with a GED Reasoning Level of 2 can "[a]pply

---

[10] In support, Plaintiff cites *Deveraeaux v. Astrue*, No. 12-cv-1168-WJM, 2013 WL 2393075 (D. Colo. May 31, 2013); *Monaghan v. Astrue*, No. 07-cv-02655-WYD, 2009 WL 1973513 (D. Colo. July 8, 2009); *Scheibeler v. Astrue*, No. 08-cv-01643-WYD, 2009 WL 3077310 (D. Colo. Sept. 21, 2009); *C.K.D. v. Kijakazi*, No. 21-cv-02155-NYW, 2022 WL 4290472 (D. Colo. Sept. 16, 2022); and *M.E. v. Comm'r, SSA*, No. 1:21-cv-00337-CNS, 2023 WL 2674419 (D. Colo. Mar. 29, 2023). However, Plaintiff fails to explain the conclusions of these cases or how the Court should apply them.

commonsense understanding to carry out detailed but uninvolved written or oral instructions [and] [d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* Alternatively, workers with a GED Reasoning Level of 1 can "[a]pply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* The ALJ found that Plaintiff had the RFC to perform "light work" with a limitation to "routine repetitive tasks and simple decision making." Tr. 29. The Court notes that the ALJ did not find that Plaintiff was limited to carrying out simple instructions and only used the word "simple" in reference to decision making.

The Court finds that three cases cited by Plaintiff are distinguishable because they involved RFC limitations to simple *instructions*, which was not included in Plaintiff's RFC. *See M.E. v. Comm'r, SSA*, No. 1:21-cv-00337-CNS, 2023 WL 2674419, at *4 (D. Colo. Mar. 29, 2023) (finding "a discrepancy between the language of the level-two reasoning guideline and the RFC limitation to . . . understanding 'simple' instructions"); *Deveraeaux v. Astrue*, No. 12-cv-1168-WJM, 2013 WL 2393075, at *8 (D. Colo. May 31, 2013) (finding that a "limitation to 'simple and routine instructions . . . .'" is inconsistent with Reasoning Level 2 because "[o]ne of the fundamental differences between the levels is that reasoning level 1 involves the ability to understand 'simple' instructions; whereas reasoning level 2 involves the ability to understand 'detailed instructions'") (internal citation omitted); *Scheibeler v. Astrue*, No. 08-cv-01643-WYD, 2009 WL 3077310, at *2 (D. Colo. Sept. 21, 2009) (concluding that "jobs . . . [with] a reasoning level of two or higher" were inconsistent with a limitation to "carry out at least routine and repetitive tasks

and instructions") (internal citation omitted). Therefore, the Court does not find that these decisions support Plaintiff's argument.

As for Plaintiff's reliance on *Monaghan v. Astrue*, Plaintiff inaccurately represents the Court's conclusion as "stating that 'simple, repetitive work activity' is consistent with R1 [and] not R2." *Brief* [#10] at 23 (quoting *Monaghan v. Astrue*, No. 07-cv-02655-WYD, 2009 WL 1973513, at *12 (D. Colo. July 8, 2009)). While the Court in *Monaghan* found that the plaintiff's limitation to "simple, repetitive work activity" was inconsistent with "a mental RFC exceeding R1," it reasoned that the ALJ's finding that the plaintiff could do past relevant work that required a mental RFC exciding R1 "may not have been supported by substantial evidence, *particularly given Plaintiff's low I.Q.*" *Monaghan*, No. 07-cv-02655-WYD, 2009 WL 1973513, at *12 (emphasis added). The Court does not find that such reasoning applies in this case because medical evidence showed that Plaintiff "had a full scale IQ score of 92." Tr. 33. Additionally, in *C.K.D. v. Kijakazi*, "the Court expressly decline[d] to rule that a limitation to simple, routine tasks is *de facto* incompatible with level-two reasoning jobs." *C.K.D. v. Kijakazi*, No. 21-cv-02155-NYW, 2022 WL 4290472, at *6 (D. Colo. Sept. 16, 2022). While the Court finds the *C.K.D.* decision persuasive to the extent that it shows that there is a "district-court split of authority on this issue," Plaintiff's mere reference to the decision is insufficient to show that the ALJ's step five decision was based on legal error. *Id.* at *5.

Defendant cites two relevant, more recently decided cases. In *J.S.M. v. Kijakazi*, the Court rejected the plaintiff's argument that "a reasoning level of two . . . is inconsistent with his ability to perform only simple or routine work." *J.S.M. v. Kijakazi*, No. 22-cv-00884-RM, 2023 WL 2033747, at *3 (D. Colo. Feb. 15, 2023). The Court concluded that "a

limitation for simple and routine work tasks . . . is consistent with the demands of level-two reasoning." *Id.* In reaching its conclusion, the Court noted that the "[d]efendant cite[d] ample unpublished cases following this rationale . . . to which Plaintiff offer[ed] no response." *Id.* In *M.L.S. v. Commissioner, Social Security Administration*, the court similarly concluded that "applicable authority from this Circuit does not support [the] argument" that "jobs . . . are incompatible with simple work [when] the[y] all have a reasoning level of 2." *M.L.S. v. Comm'r, SSA*, No. 1:22-cv-00319-SKC, 2023 WL 7551561, at *4 (D. Colo. Nov. 14, 2023) (internal citation, quotation marks, and modification omitted). Defendant also cites several unpublished cases from other Tenth Circuit district courts that support this precedent. *See Response* [#12] at 20-21 n.7.

Overall, Plaintiff fails to adequately argue that an apparent unresolved conflict existed between the VE evidence and the DOT which the ALJ should have "elicit[ed] a reasonable explanation for" before relying on the VE evidence to support her determination. SSR 00-4p, 2000 WL 1898704, at *2. Plaintiff merely references five outlier cases without providing any further reasoning as to why the Court should apply the same reasoning. The Court finds *J.S.M.* and *M.L.S.* more persuasive, and therefore finds no legal error in the ALJ's reliance on the VE's testimony that Plaintiff could perform the provided jobs.

Thus, for the reasons stated above, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not disabled under the Act during the time relevant to this case. Therefore, the Court finds no reversible legal error.

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: September 23, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge